# UNITED STATES DISTRICT COURT

for the
Eastern District of Pennsylvania

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 17-1680-M
1080 East Eleventh Street, Pennsburg, Pennsylvania 18073 )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
1080 East Eleventh Street, Pennsburg, Pennsylvania 18073

located in the _____EASTERN_____ District of _____PENNSYLVANIA_____, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment "B."

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. Section 876 | Mailing threats |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Joshua D. Reed, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____12/21/2017_____

*Judge's signature*

City and state: Philadelphia, Pennsylvania          U.S. Magistrate Judge Marylyn Heffley
*Printed name and title*

## **AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Joshua D. Reed, a Special Agent with the Federal Bureau of Investigation, (FBI), being duly sworn, state as follows:

### **BACKGROUND:**

I have been employed as a Special Agent with the FBI since December 7, 1998 and I am currently assigned to the Philadelphia Division, Fort Washington Resident Agency. During my tenure, I have conducted a variety of investigations involving violations of federal law including, among others, violent crimes and threats. During the course of my employment, I have participated in the execution of numerous search and arrest warrants, pursuant to which I have seized evidence of in support of plans to conduct and/or participate in violent activity. During the course of this investigation, I have discussed this case and the information described below with other Special Agents employed by the FBI, as well as local partners with the Upper Perk Police District (Upper Perk PD) who are directly involved in this investigation.

### **PROBABLE CAUSE**

I submit this affidavit in support of the application of the United States for a warrant to search the residence of BRIAN M. KIERNAN, JR. (hereinafter referred to as KIERNAN), which is located at 1080 East Eleventh Street, Pennsburg, Pennsylvania 18073 (SUBJECT PREMISES), more particularly described in Attachment A. KIERNAN shares that residence with a roommate. KIERNAN has his own bedroom. The items to be seized are listed on Attachment B and are limited to items belonging to or used by KIERNAN.

The statements contained in this affidavit are based on my investigation, information obtained from other agents as well as detectives and police officers with the Upper Perk PD, surveillance, as well as documents and reports obtained during this investigation. I am familiar with the information described herein. As this affidavit is being submitted for the limited purpose of requesting a warrant to search premises, I have not included every fact known to me concerning this investigation, rather, I have set forth only the facts that I believe are necessary to establish probable cause for the issuance of a search warrant for the SUBJECT PREMISES.

In approximately August, 2017, the Upper Perk PD received a series of complaints from multiple residents of Pennsburg, Pennsylvania and neighboring communities. The complainants had received mailings, postmarked and sent through the United States Postal Service, at their respective residences. Multiple

versions of the mailings have been observed by the affiant. One of the mailings included a drawing of a Caucasian male holding a flag bearing a swastika. The words "White and Proud" are written on the mailing. A second mailing depicts a male, with an Israeli flag drawn on his shirt, handling marionettes. The drawing depicts the marionettes stating, "38 Billion Foreign Aid for Israel" and "Israel is our Greatest Ally!" respectively. A swastika is included on the mailing. A third version of the mailing depicts an African American male holding a knife to the throat of a male wearing a suit. Written on the mailing is "Welcome to Multicultural USA," "Feeling Enriched?" A swastika is included on the mailing. The mailings also included quotes attributable to Adolf Hitler and Joseph Goebbels.

Investigation by the Upper Perk PD determined KIERNAN likely created and distributed the mailings.

On November 15, 2017, Brian Kiernan, Sr. and Ann Kiernan, husband and wife, were interviewed by the affiant. The Kiernans said that KIERNAN is their son. In approximately September, 2017, KIERNAN told his parents that he created and distributed 4,000 of the above described mailings to residents of Pennsburg and surrounding communities. (Your affiant notes that law enforcement have only reviewed a small sampling of these mailings which were reported by their recipients; law enforcement did not know there were 4,000 such mailings. Law enforcement thus cannot yet say what the content of all 4,000 mailings were.)

Within the past 18 months, KIERNAN has told his parents that he blames "Jews" for perceived financial difficulties and that he is a supporter of racial purity.

On December 20, 2017, KIERNAN was contacted by the affiant and an officer of the Upper Perk PD at KIERNAN's residence, 1080 East Eleventh Street, Pennsburg, Pennsylvania. Prior to any substantive conversation, KIERNAN was advised, by the affiant, that he was not under arrest and had no legal obligation to answer any questions. KIERNAN agreed to be interviewed and traveled with the affiant and Upper Perk PD officer to a diner in Pennsburg, Pennsylvania, where the interview took place. During the subsequent interview, KIERNAN provided the following information:

KIERNAN self-identifies as a "White Nationalist." Kiernan believes "Jews are masquerading as a religion when they are really a nation" and are trying to takeover America. KIERNAN personally created and distributed 4,000 of the aforementioned mailings to residents of Pennsburg, Pennsylvania and surrounding communities. He created the mailings using his personal computer, which is physically located inside the SUBJECT PREMISES. The original, electronic versions of the 4000 mailings he

created are saved to that computer. KIERNAN personally surveilled each residence to which he sent a mailing. He took notes on the appearance of each residence, which he used to personalize many of the mailings by referencing the physical observations he had made about the residence to which the mailing was sent. KIERNAN has retained these surveillance notes in his residence in the event he chooses to send mailings again. KIERNAN possesses four guns, to include two handguns, one "AR 15" rifle, and one shotgun. KIERNAN also purchased a ballistic vest from an on-line retailer. The weapons and ballistic vest are located in the SUBJECT PREMISES.

KIERAN stated to the affiant he has, "recently thought about targeting and assassinating Jews and political agitators." He has considered both overtly Jewish places of worship and "cryptic" Jewish businesses as his potential targets. KIERNAN described a "cryptic" Jewish business as a business someone wouldn't ordinarily describe as being Jewish but that is actually controlled by Jews. KIERNAN specifically identified Brode and Brooks Realtors, (418 Main Street, Pennsburg, PA 18073), as one such "cryptic" Jewish business. KIERNAN believes the owner of Brode and Brooks, whom KIERNAN identified by name, is Jewish and is attempting to unlawfully influence and/or bribe the local school board with money.

KIERNAN stated to the affiant that he "radicalized" (not further defined) during the 2016 Presidential campaign.

KIERNAN stated that he has been attempting to identify and communicate with other individuals that share his "White Nationalist" views and anti-Semitic beliefs so he can develop a "social support network." He has tried to do this through posting on various websites and blogs.

Based upon the affiant's experience, individuals who threaten mass shootings and/or ideologically based violent crimes often research potential targets by accessing information available through on-line resources using a computer and/or other electronic devices. They also acquire physical equipment, specifically firearms, ammunition, and ballistic body armor, to be used to carry out their threats should they choose to do so. Additionally, individuals willing to engage in ideologically based threats and violent crimes often attempt to communicate with other like-minded individuals through the use of on-line websites and forums as facilitated through access to the Internet.

Based on the investigation described above, there is probable cause to believe that evidence is located in KIERNAN's residence showing that he is threatening, and making preparations, to carry out violent assaults against victims based upon his perception that they are members of the Jewish faith; that he has communicated and

wishes to again communicate threatening messages using the United States Mails; that he has conducted surveillance and reconnaissance to further those goals; that he has been acquiring and possesses the necessary tools and weapons to carry out violent attacks should he chose to make good on such threats; and that he has attempted to find and recruit other individuals to join him in his endeavors through the internet.

### SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

As discussed above, some of the evidence likely to be found will be stored in KIERNAN's computer. Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of millions of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order and/or with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site.

b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password protected, or encrypted files. Because computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

### SEARCH METHODOLOGY TO BE EMPLOYED:

To search for electronic data contained in computer hardware, computer software, and/or memory storage devices, the examiners will make every effort to use computer forensic software to have a computer search the digital storage media. This may include the following techniques (the following is a non exclusive list, as other search procedures may be used)(any or all of these procedures will be used to search only for the items which the warrants permits to be searched for):

    a.    Surveying various file directories and the individual files they contain;

    b.    Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in the warrant

    c.    Opening files in order to determine their contents;

    d.    Scanning storage areas;

    e.    Searching for malware (computer code not intended by the user) in order to, if necessary, rebut a defense that malware caused the postings, if any, to websites by KIERNAN seeking to recruit others to assist in his activities;

    f.    Performing keyword searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment B; and/or

    g.    Performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B.

ABILITY TO RETRIEVE DELETED FILES

Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet. Electronic files downloaded to a hard drive or storage device can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files may reside in free space or slack space that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary

Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on the particular user's operating system, storage capacity, and computer habits.

## APPLICABLE CRIMINAL STATUTES

Based on my training, experience, participation in this investigation, consultation with other law enforcement agents/officers and the evidence outlined above, I submit there is probable cause to believe that evidence, and instrumentalities of violations of Title 18 United States Code, Section 876 (Mailing Threatening Communications) are located at the SUBJECT PREMISES. For the foregoing reasons, I respectfully request that a Search Warrant be issued authorizing a search of the SUBJECT PREMISES and items found therein and the seizure of items listed in Attachment B.

Respectfully submitted,

_____
Joshua D. Reed
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on December 21st, 2017

BY THE COURT:

_____
HONORABLE MARILYN HEFFLEY
*United States Magistrate Judge*